IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| QUENTIN HUCKABY,<br>   Plaintiff,<br><br>v.<br><br>BNSF RAILWAY COMPANY,<br>   Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 4:11-cv-131<br>ECF |

### PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE DISTRICT COURT JUDGE:

NOW COMES Plaintiff, Quentin Huckaby, and files this, his Plaintiff's Original Complaint, alleging that Defendant BNSF Railway Company ("BNSF") violated the Family Medical Leave Act of 1993. Mr. Huckaby worked for Defendant. Mr. Huckaby took FMLA leave concerning a heart condition. Despite providing all documentation required by the FMLA to be returned to work, Defendant refused to return Mr. Huckaby. Because of BNSF's actions, Mr. Huckaby lost significant wages. In support of Plaintiff's Original Complaint, Plaintiff respectfully shows the following:

I.
PARTIES

1. Mr. Huckaby is an individual who resides in Tarrant County, Texas.

2.     BNSF Railway Company is a Delaware corporation that may be served with process by serving its registered agent for service of process, C. T. Corporation System, at its registered address, 350 N. St. Paul St., Ste. 2900, Dallas, TX 75201.

II.
JURISDICTION AND VENUE

3.     The Court has jurisdiction over BNSF.  BNSF is a resident of the state of Texas with a principal place of business in Fort Worth. Defendant purposefully availed itself of the privileges and benefits of conducting business in Texas by registering with the Secretary of State to conduct business in Texas and registering an agent for service of process in Texas.  Defendant has minimum contacts with the state of Texas and an assertion of jurisdiction will not offend traditional notions of fair play and substantial justice.

4.     Subject matter jurisdiction is proper because this case asserts claims for violation of the Family Medical Leave Act, a federal law that provides for federal question jurisdiction.

5.     Venue is appropriate in the Northern District of Texas because the acts giving rise to this suit occurred in Tarrant County, Texas.

III.
FACTS

6.     Quentin Huckaby began working for Defendant on or about December 20, 2004.

7.     Mr. Huckaby worked for BNSF as a train dispatcher throughout his employment with BNSF.

___

8. Mr. Huckaby suffers from arrhythmia/tachycardia, more specifically paroxysmal supraventricular tachycardia (PSVT). This condition means that Mr. Huckaby periodically has a rapid heartbeat. When Mr. Huckaby's heartbeat speeds up, he goes to the hospital and receives a Benzene injection.

9. On June 29, 2009, Mr. Huckaby requested FMLA intermittent leave from BNSF.

10. In requesting leave, Mr. Huckaby gave thirty days notice of his need for leave. Alternatively, Mr. Huckaby gave notice of his need for leave as soon as practicable.

11. On August 4, 2009, BNSF provided Mr. Huckaby with a letter titled "Approval and Designation of FMLA Leave – Medical Leave."

12. This August 4, 2009 letter is the "rights and responsibilities notice" contemplated by 29 C.F.R. § 825.300(c).

13. This August 4, 2009 letter is the "designation notice" contemplated by 29 C.F.R. § 825.300(d).

14. The August 4, 2009 letter approved Mr. Huckaby's request for intermittent leave from August 1, 2009 through July 31, 2010.

15. An employer may require a fitness for duty certification from an employee. 29 C.F.R. § 825.312. A default fitness for duty certification merely requires that the employee's health care provider certify that the employee is able to resume work. 29 C.F.R. § 825.312(b).

16. The Department of Labor has adopted regulations governing when and how an employer may request additional information beyond this default fitness for duty certification. A request for additional information in a fitness for duty certification must follow these regulations. In order for an employer to require a fitness for duty certification that specifically addresses the employee's ability to perform the essential functions of the employee's job, the "employer must provide an employee with a list of the essential functions of the employee's job no later than with the designation notice required by § 825.300(d), and must indicate in the designation notice that the certification must address the employee's ability to perform those essential functions." 29 U.S.C. § 825.312(b).

17. Thus, the deadline for BNSF to require anything more than a default fitness for duty certification is the date of the designation notice, in this case August 4, 2009.

18. Nothing in the agreement between the ATDD/BLE and the BNSF Railroad (the collective bargaining agreement), nor any state or local law, changes the fitness for duty certification requirements under the FMLA concerning Mr. Huckaby.

19. The August 4, 2009 letter does not provide a description or listing of Mr. Huckaby's essential functions.

20. In August 2009, Mr. Huckaby exercised his approved intermittent FMLA leave.

21. Mr. Huckaby attempted to return from his intermittent leave.

22. BNSF required Mr. Huckaby's physician to submit a "Medical Status Form: Cardiac Review."

23. The "Medical Status Form: Cardiac Review" is the fitness for duty certification contemplated by 29 C.F.C. § 825.312.

24. Brian McNamara, M.D. submitted the requested "Medical Status Form: Cardiac Review" dated August 27, 2009, releasing Mr. Huckaby to "Full Duty (No Restrictions)." Dr. McNamara specifically signed a statement that "This patient's heart condition is stable, he/she is compliant with his/her treatment plan, and he/she is safe and able to continue working in his/her safety sensitive position with the railway."

25. Upon receipt of the Medical Status Form: Cardiac Review, Mr. Huckaby should have been returned to work. 29 C.F.R. 325.312(b).

26. Even if clarification is needed, an "employer may not delay the employee's return to work." 29 C.F.R. 325.312(b).

27. Despite Dr. McNamara's certification, BNSF refused to return Mr. Huckaby to work.

28. On September 29, 2009, Dr. McNamara again provided BNSF with the requested "Medical Status Form: Cardiac Review" releasing Mr. Huckaby to "Full Duty (No Restrictions)." Dr. McNamara again signed a statement that "This patient's heart condition is stable, he/she is compliant with his/her treatment plan, and he/she is safe and able to continue working in his/her safety sensitive position with the railway."

29. On September 29, 2009, Elizabeth L. Hill, D.O., another of Mr. Huckaby's physicians, provided the requested "Medical Status Form: Cardiac Review" releasing Mr. Huckaby to "Full Duty (No Restrictions)." Dr. Hill signed a statement that "This patient's heart condition is stable, he/she is compliant with his/her treatment plan, and he/she is safe and able to continue working in his/her safety sensitive position with the railway."

30. BNSF acknowledged receipt of the August 27, 2009 "Medical Status Form: Cardiac Review" and the September 29, 2009 "Medical Status Form: Cardiac Review" in facsimile dated October 1, 2009 from Sharon Clark to Dr. McNamara.

31. The multiple certifications went above and beyond any requirement of the FMLA, for which "[n]o second or third opinions on a fitness-for-duty certification may be required." 29 C.F.R. § 825.312(b).[1]

32. In providing the "Medical Status Form: Cardiac Review" forms, Mr. Huckaby submitted a complete and sufficient certification signed by the healthcare provider.

---

[1] This is an important difference in the way the FMLA treats the initial certification of a serious medical condition from the fitness for duty certification. The employer may require a second (and third) medical opinion regarding whether the employee qualifies for medical leave. 29 C.F.R. § 825.307. However, for return to work purposes, the employer is expressly prohibited from any further medical review, other than the employee's physician's fitness for duty certification. 29 C.F.R. § 825.312.

33. "If an employee submits a complete and sufficient certification signed by the health care provider, the employer may not request additional information from the health care provider." 29 C.F.R. § 825.307(a).

34. If an employer has additional questions about the fitness for duty certification, it must (1) return the employee to work without delay, and (2) contact the health care provider only for purposes of "clarification" or "authentication." 29 U.S.C. § 825.312(b).

35. "'[A]uthentication' means providing the health care provider with a copy of the certification and requesting verification that the information contained on the certification form was completed and/or authorized by the health care provider who signed the document; no additional medical information may be requested. 'Clarification' means contacting the health care provider to understand the handwriting on the medical certification or to understand the meaning of a response. Employers may not ask health care providers for additional information beyond that required by the certification form." 29 C.F.R. § 825.307(a).

36. There is nothing about the "Medical Status Form: Cardiac Review" form that required authentication.

37. The "Medical Status Form: Cardiac Review" forms provided by Mr. Huckaby were authentic.

38. There is nothing about the "Medical Status Form: Cardiac Review" form that required clarification.

___

39. The "Medical Status Form: Cardiac Review" forms provided by Mr. Huckaby were clear.

40. The statement, signed twice by Dr. McNamara and once by Dr. Hill, that: "This patient's heart condition is stable, he/she is compliant with his/her treatment plan, and he/she is safe and able to continue working in his/her safety sensitive position with the railway" is clear.

41. The statement, signed twice by Dr. McNamara and once by Dr. Hill, that: "This patient's heart condition is stable, he/she is compliant with his/her treatment plan, and he/she is safe and able to continue working in his/her safety sensitive position with the railway" unambiguously states that Mr. Huckaby can safely and ably return to work.

42. On or about October 1, 2009, BNSF requested additional information beyond that required by the "Medical Status Form: Cardiac Review."

43. BNSF requested the following additional information from Dr. McNamara:

| | |
|---|---|
| [ ] Yes [ ] No | The use of FMLA leave days by Mr. Huckaby (= number of times the SVT disallowed Mr. Huckaby ability to work) is consistent with controlled SVT. |
| [ ] Yes [ ] No | Were you aware that he was taking this many days off for his cardiac condition? |
| [ ] Yes [ ] No | Has Mr. Huckaby required a cardioversion since July, 2009? |
| [ ] Yes [ ] No | If Mr. Huckaby successfully uses valsalva maneuver to convert, would this action leave him unable to work? |

___

| | |
|---|---|
| [ ] Yes [ ] No | Based on the number of times Mr. Huckaby has had an exacerbation of his SVT (which disallowed his working), should he be evaluated by you now prior to his return to work? |
| [ ] Yes [ ] No | If Mr. Huckaby is at work and has an exacerbation which he claims disallows his continuing to work for that day, should he be allowed to drive himself home? |
| [ ] Yes [ ] No | If Mr. Huckaby is at work and has an exacerbation which he claims disallows his continuing to work for that day, should he be evaluated at that time in an ER setting or by you in your office? |

44.  BNSF also requested that Dr. McNamara sign the following statement:

I am aware that this employee does the following in his/her job for BNSF Railway:  The Train Dispatcher utilizes audio (radio, telephone, face-to-face) and visual (computer work screen) prompts to make decision based on stringent, voluminous rules and procedures.  The audio and visual prompts from multiple trains with subsequent demands from others for on-track access, etc results in the Train Dispatcher having to communicate precise instructions to employees at remote locations.  Failure to make accurate decisions, whether in the realm of hearing, vision or judgment could lead to train collision or other catastrophic consequences.  The Train Dispatcher's position is considered safety-sensitive.  **If the Dispatcher's performance is impaired in any way, he could place others, in addition to himself, in danger.  I have considered these responsibilities in reaching my professional opinion regarding this employee's medical conditions/diagnosis and capability to work safely.**

(Emphasis in original.)

45.  The essential functions in this statement were not identified prior to or in the August 4, 2009 designation notice.

46.  The true purpose of this statement was to scare and intimidate Dr. McNamara and Mr. Huckaby.

___

47. BNSF told Mr. Huckaby that if he accepted alternative employment, he would be fired.

48. BNSF required Mr. Huckaby to submit his medical records for BNSF's review.

49. BNSF continued to refuse to return Mr. Huckaby to work until December 28, 2010.

50. All conditions precedent to the bringing of this lawsuit have been satisfied and fulfilled.

## IV.
## CAUSE OF ACTION

51. BNSF is engaged in commerce or in an industry or activity affecting commerce that employs fifty or more employees for each working day during each of twenty or more calendar workweeks in the current or preceding calendar year.

52. At all times relevant to the issues in this lawsuit, Mr. Huckaby was an employee of BNSF.

53. Mr. Huckaby was employed by BNSF for at least 12 months.

54. Mr. Huckaby was employed for at least 1,250 hours of service for BNSF during the twelve months preceding his request for FMLA leave.

55. BNSF has employed fifty or more employees within seventy-five miles of Mr. Huckaby's worksite.

56. Mr. Huckaby took FMLA leave for a serious medical condition.

57. Mr. Huckaby gave proper notice of the need to take FMLA leave.

58. BNSF approved the leave.

___

59. BNSF interfered with Mr. Huckaby's right to reinstatement under the FMLA by:

    a. Failing to reinstate Mr. Huckaby upon receipt of the August 27, 2009 fitness for duty certification signed by Dr. McNamara;

    b. Requesting additional information from Dr. McNamara even though the fitness for duty certification was complete and sufficient;

    c. Asking for a second or third opinion concerning the fitness for duty certification;

    d. Requiring that Mr. Huckaby submit his medical records for BNSF's independent review;

    e. Requiring his doctor certify Mr. Huckaby's ability to perform alleged essential functions where the essential functions were not identified in or before the designation notice;

    f. Requiring his doctor certify Mr. Huckaby's ability to perform alleged essential functions where no such requirement was listed in the designation notice; and

    g. Harassing Mr. Huckaby and his doctors though intimidation and scare tactics.

60. Alternatively, BNSF retaliated against Mr. Huckaby for taking FMLA leave by:

a. Failing to reinstate Mr. Huckaby upon receipt of the August 27, 2009 fitness for duty certification signed by Dr. McNamara;

b. Requesting additional information from Dr. McNamara even though the fitness for duty certification was complete and sufficient;

c. Asking for a second or third opinion concerning the fitness for duty certification;

d. Requiring that Mr. Huckaby submit his medical records for BNSF's independent review;

e. Requiring his doctor certify Mr. Huckaby's ability to perform alleged essential functions where the essential functions were not identified in or before the designation notice;

f. Requiring his doctor certify Mr. Huckaby's ability to perform alleged essential functions where no such requirement was listed in the designation notice; and

g. Harassing Mr. Huckaby and his doctors though intimidation and scare tactics.

61. Because the actions of BNSF, Mr. Huckaby has suffered damages.

## V.
## JURY DEMAND

62. Plaintiff exercises his right to trial by jury.

# VI.
# DAMAGES

63. Plaintiff seeks his wages and benefits denied or lost by reason of the violation. This includes Mr. Huckaby's wages, health benefits, retirement benefits, and all other benefits.

64. Plaintiff seeks pre and post-judgment interest on the lost wages and benefits.

65. Plaintiff seeks liquidated damages equal to the sum of the lost wages and benefits and interest.

66. Plaintiff seeks equitable relief including an injunction against future violations, a notice sent to all employees regarding their FMLA leave rights, monitoring by the Department of Labor, training of employees and HR personnel regarding FMLA rights, and adoption of an appropriate complaint procedure.

67. Plaintiff seeks his attorney fees and costs of court.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that Summons be issued, and that upon a trial on the merits that Plaintiff be awarded the relief requested in this Complaint and such other and further relief to which he may be justly entitled.

Respectfully submitted,


By: */s/ Robert J. Wiley*
Robert J. Wiley
Texas Bar No. 24013750
*Board Certified in Labor & Employment Law*
*by the Texas Board of Legal Specialization*
Justin G. Manchester
Texas Bar No. 24070207
Stacey Cho
Texas Bar No. 24063953

LAW OFFICE OF ROB WILEY, P.C.
1825 Market Center Blvd., Suite 385
Dallas, Texas 75207
Telephone: (214) 528-6500
Facsimile: (214) 528-6511
jmanchester@robwiley.com

___